UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ORLANDO O. ROMAN, 04-B-0396,

                                        Plaintiff,

-vs-

J. McKOY, Deputy Commissioner of Programs
for DOCCS, J. HUGHES, Deputy Superintendent
of Programs at Southport Correctional Facility,
also known as J. MACKEY, K. WASHBURN,
Mailroom Supervisor Southport Correctional
Facility, and JANE/JOHN DOE, Administration,
Southport Correctional Facility,

                                        Defendants.

_____

DECISION and
ORDER

15-CV-6396 CJS

INTRODUCTION

Orlando Roman ("Plaintiff"), formerly an inmate in the custody of the New York

State Department of Corrections and Community Supervision ("DOCCS"), brings this

action pursuant to 42 U.S.C. 1983, proceeding *pro se*, alleging that the defendants, all of

whom were employed by DOCCS, violated his federal constitutional rights by interfering

with his mail while he was confined at Southport Correctional Facility ("Southport").  Now

before the Court are Defendants' Motion to Dismiss the Complaint pursuant to Federal

Rule of Civil Procedure ("FRCP") 12(b)(6) (ECF No. 14) and Plaintiff's Motion to Appoint

Counsel and to Amend/Correct the Complaint (ECF No. 18). The motion to appoint

counsel is denied, the remaining motions are granted, and this action is dismissed.

BACKGROUND

Unless otherwise noted, the following facts are taken from the Complaint,

documents attached to the Complaint as exhibits, documents incorporated by reference

in the Complaint, and documents in underlying state- and federal-court actions filed by Plaintiff of which the Court has taken judicial notice.

At all relevant times Plaintiff was at Southport serving his sentence after having been convicted, on January 16, 2004, of several crimes against a minor child, "including rape in the first degree." *People ex rel. Roman v. Griffin*, 89 A.D.3d 1247, 1247, 932 N.Y.S.2d 390 (Third Dept., Nov. 10, 2011). In particular, after a bench trial Plaintiff "was convicted under Penal Law § 130.35(4)," *see, People v. Roman*, 85 A.D.3d 1630, 1632, 925 N.Y.S.2d 310, 312 (2011), which prohibits sexual intercourse with another person "[w]ho is less than thirteen years old and the actor is eighteen years old or more." Plaintiff was also convicted separately, upon his plea of guilty, of bribing a witness (the victim's mother-- his estranged wife). *People ex rel. Roman v. Griffin*, 89 A.D.3d at 1248.

At the bench trial, the victim (Plaintiff's former stepdaughter) and her mother (Plaintiff's former wife) both testified for the prosecution and were cross-examined extensively by Plaintiff's defense attorney. Much of the cross-examination focused on alleged inconsistencies between the witnesses' trial testimony and their prior statements concerning the nature, circumstances, and dates of the sexual abuse.

For example, the child victim was cross-examined about alleged inconsistencies between her trial testimony and statements that she had previously made.[1] In this regard, the child testified about statements she had made to police, including those in her 5-page supporting deposition to the felony complaint, those made to Child Protective Services, and those made to her therapist. *See, e.g., Roman v. Fierro*, 6:12-CV-6123, ECF No. 1-

---

[1] *See, e.g., Roman v. Fierro*, 6:12-CV-6123, ECF No. 1-2 at p. 13 (Trial transcript, defense counsel cross-examining victim about alleged inconsistency between her testimony and her supporting deposition); *see also*, Amended Complaint, ECF No. 4 at ¶ 100 ("The Felony Complaint avers to a 5-page deposition supposedly written by [the child] and filed in support of the Felony Complaint.").

2 at p. 136, Trial Tr. at p. 80 ("Q. Who was [it] that you told? A. Child Protective and the police."; *see also, id.* at p. 142, Trial Tr. at p. 107: "My therapist was told everything after I spoke with Child Protective and the police.").

Regarding the dates of the abuse, the child indicated that the abuse had occurred while she and her mother were still residing in the marital home with Plaintiff, and she and her mother testified that they had moved out of the marital home in early 2000.[2]  Defense counsel impeached the victim and her mother about those dates.  For example, defense counsel confronted the child's mother with her sworn signature on a separation agreement in which she had agreed that she had vacated the marital residence in April 2001.[3]  Defense counsel also impeached the child with her prior sworn inconsistent testimony in a Family Court proceeding.[4]

Nevertheless, the trial judge found Plaintiff guilty, despite what Plaintiff maintains were "numerous" inconsistencies in the witnesses' testimony:

> Despite the Court's apprehension with the element of time, the numerous inconsistencies in the complainant's testimony as well as the numerous inconsistencies in the complainant's mother's testimony, and despite the complainant having acknowledged testifying in Family Court that the reason her mother and I had separated was because – "they were having problems I guess," on December 10, 2003, the Hon. Kenneth R. Fisher rendered a verdict of guilty.

Am. Compl. (ECF No. 4) at ¶ 165.

Plaintiff subsequently spent many years trying to overturn his convictions.[5] In that regard, Plaintiff pursued direct appeals; motions for petitions of writ of error coram nobis;

---

[2] *See, e.g.*, Exs. to Am. Compl., ECF No. 4-1 at pp. 124, 126, 128-130
[3] ECF No. 4-1 at p. 131. The witness later indicated that she had not moved all of her property out of the home until April 2001.
[4] Am. Compl., ECF No. 4 at pp. 28–32.
[5] Plaintiff succeeded in having the period of his post-release supervision reduced.

motions under New York Criminal Procedure Law ("CPL") 440; and state-court habeas corpus petitions.[6] *See, e.g.*, *People v. Roman*, 43 A.D.3d 1282, 1282, 842 N.Y.S.2d 640, 641 (4th Dept. 2007) (denying direct appeal); *People v. Roman*, 50 A.D.3d 1629, 855 N.Y.S.2d 410 (4th Dept. 2008) (denying motion for writ of error coram nobis); *People ex rel. Roman v. Griffin*, 89 A.D.3d at 1248 (Affirming an order of the Chemung County Court, dated September 23, 2010, dismissing Plaintiff's petition under New York CPLR Article 70 collaterally attacking his convictions, filed after an unsuccessful direct appeal and an unsuccessful 440.10(1) motion).   Plaintiff also filed two actions in this Court, attempting to collaterally attack his convictions. *See, Roman v. Napoli*, 6:08-cv-06561-MAT-VEB, ECF No. 41 (dismissing federal habeas petition) and *Roman v. Fierro*, 6:12-CV-6123.

Throughout such litigation, Plaintiff asserted, primarily, that the child and her mother had lied about the acts of sexual abuse for which he was convicted.[7]   Plaintiff argued that the victim and her mother had incorrectly testified at trial that they had moved out of the marital home early in the year 2000, when they actually did not leave until November 2000. (Plaintiff maintains that they left temporarily in November 2000, and then left permanently in April 2001.)[8]   Additionally, Plaintiff argued that the child had embellished at trial by testifying to instances of sexual abuse that she had not mentioned in her prior statements.   As proof of these assertions, Plaintiff relied, *inter alia*, on the statements, mentioned earlier, given by the child to investigators,[9] on statements by his

---

[6] In a separate action filed by Plaintiff, this Court already made a detailed description of Plaintiff's efforts to appeal and collaterally attack his convictions. *See, Roman v. Napoli*, 6:08-CV-6561, Decision and Order, ECF No. 41 at pp. 2-6; *see also, Roman v. Fierro*, 6:12-CV-6123, ECF No. 1 at p. 26 (Indicating that on May 2, 2010, Plaintiff filed a habeas petition in State Supreme Court, Chemung County, pursuant to CPLR Article 70).

[7] Plaintiff also asserted ineffective assistance of counsel. *See, e.g., Roman v. Fierro*, 6:12-CV-6123, ECF No. 1 at pp. 51-62.

[8] *See, e.g.*, Am. Compl. (ECF No. 4) at ¶ 159.

[9] *See, e.g., Roman v. Napoli*, 08-CV-6561, ECF No. 1, habeas petition at pp. 31 (Asserting that contrary

wife in a divorce proceeding commenced shortly after the criminal trial, and on two police reports from the Town of Gates[10] concerning domestic disturbances that had occurred prior to Plaintiff being charged with the crimes for which he now stands convicted.[11] According to Plaintiff, the documentary evidence showed that the victim and her mother were still living in the marital home during 2000, and that the child had failed to tell investigators about alleged acts of abuse to which she later testified at trial.[12]   An underlying theme throughout Plaintiff's post-conviction litigation was the assertion that his wife had orchestrated the allegations against him in order to cover up the fact that she had been having an extramarital affair.[13]

However, the courts rejected Plaintiff's repeated attempts to upset his convictions based on such alleged newly discovered evidence.  For example, the trial court rejected Plaintiff's motion under CPL 440.10 based on the alleged inconsistent statements by the child's mother in a sworn divorce complaint, stating that the evidence was "mere impeachment material" which would not have affected the outcome of the trial.[14] Additionally, in affirming the dismissal of Plaintiff's state-court habeas petition, the New York State Supreme Court, Appellate Division Third Department, stated:

> Petitioner contends that, based upon evidence newly discovered after his conviction by trial, concerns were raised about the veracity of certain key witnesses that would have precluded a grand jury from indicting him or his having been found guilty after trial. However, where claims could have been

---

to the child's testimony at trial, she "did not mention sodomy in the supporting deposition she wrote at the behest of the police[.]") & 32 (reiterating that the child testified differently than what she had stated in her supporting deposition).

[10] *See, Roman v. Fierro*, 6:12-CV-6123, ECF No. 1 at ¶ 22 (Plaintiff obtained two police reports, concerning incidents on March 24, 2000 and August 30, 2000, respectively).  In 2006,  Plaintiff utilized the reports in a  440 motion, in an attempt to have his convictions set aside. *Id*. at ¶ 45.

[11] *See, Roman v. Fierro*, 6:12-CV-6123, ECF No. 1 at ¶¶  20-21; *id*. at  p. 48.

[12] *See, generally, Roman v. Fierro*, 6:12-CV-6123, ECF No. 1 (Alleging that the prosecution improperly failed to disclose the two police reports).

[13] *See, e.g., Roman v. Fierro*, 6:12-CV-6123, ECF No. 1-1 at pp. 24-25.

[14] Am. Compl., ECF No. 4 at ¶ 173.

asserted on direct appeal or in a CPL article 440 motion, habeas corpus relief is not an appropriate. Here, Supreme Court properly dismissed the petition inasmuch as petitioner acknowledges that the alleged newly discovered evidence was the basis for an unsuccessful motion made pursuant to CPL 440.10 (1) (g).  As such, we find no reason to depart from traditional orderly procedure.

*People ex rel. Roman v. Griffin*, 89 A.D.3d 1247, 1248, 932 N.Y.S.2d 390 (2011) (citations omitted).  Indeed, when later attempting  to collaterally attack his convictions in a federal habeas proceeding in this Court on the same grounds ("new evidence"), Plaintiff argued that the state courts had improperly rejected his arguments concerning the same alleged newly-discovered evidence discussed above. *See, e.g.*, *Roman v. Napoli*, 08-CV-6561, Am. 2254 Habeas Pet., ECF No. 4  at p. 18, ¶ l &  pp. 27-30; *see also, id.*, Petitioner's Objs., ECF No. 28 at pp. 2-4 (Arguing that the newly-discovered evidence showed that the child victim and her mother had testified falsely).

On or about July 2, 2014, more than ten years after he was convicted,  Plaintiff, who was then confined at Southport, wrote to the Monroe County Clerk, requesting copies of documents relating to his rape conviction, namely, "1) the felony complaint filed against Plaintiff in the local criminal court for the Town of Gates, on or about December 2002; 2) the supporting deposition filed with the felony complaint; 3) the divestiture (from local criminal court for the Town of Gates to the Supreme Court of the County of Monroe); and 4) transcripts of the arraignment held in the local criminal court for the Town of Gates." Compl., ECF No. 1 at ¶ 12.

Plaintiff contends that he wanted these materials because he intended to file yet another collateral attack on his convictions, alleging that he was actually innocent of the

crimes for which he was convicted.[15]  In that regard, Plaintiff indicates that he needed the documents to attempt to again show that the child victim and her mother had testified falsely against him.[16]  Particularly with regard to the felony complaint and the child victim's supporting deposition, Plaintiff states: "The Felony Complaint and 5 page Deposition filed in support of the Felony Complaint are crucial to this issue."[17]

On or about July 14, 2014, in response to Plaintiff's request the Monroe County Clerk mailed certain documents to Plaintiff at Southport.  Specifically, the County Clerk mailed Plaintiff written statements given to the police by the child victim and "divestiture documents from the lower court to the county court."[18]  The County Clerk did not send the felony complaint or the arraignment transcripts.[19]

Once the envelope arrived at Southport, it was opened by a member of the mailroom staff.    In this regard, DOCCS Directive 4421, entitled "Privileged Correspondence," indicates that mail received from a county clerk is *not* privileged, and "shall be processed as general incoming correspondence." *Id.* at § II(B)(5).  Also, DOCCS Directive 4422 states, *inter alia*, that "[a]ll incoming general correspondence will be opened and inspected for . . . contraband.  The inmate's presence is not required during the inspection of incoming general correspondence."

---

[15] Compl., ECF No. 1 at ¶ 33 (Plaintiff maintains that he needed the materials to "bring a claim of actual innocence and other claims in the Supreme Court of the County of Monroe.").

[16] McKay Decl., Ex. 1, state court  Am. Verified Compl. at p. 1, ¶ 2.

[17] Am. Compl., ECF No. 4 at ¶ 39, n. 5.

[18] *See*, McKay Decl., Ex. 4, Decision and Order of the Hon. James T. Hayden, Acting New York State Supreme Court Justice, Chemung County ("A review of the withheld documents reveals that they do not contain the felony complaint or the transcripts of the arraignment. . . .  It does appear that two documents were provided which would qualify as divestiture documents from the lower court to the county court. . . . Finally, the statements taken by the police of the victims [sic] were apparently [also] sent to the Correctional Facility[.]").

[19] *See*, McKay Decl., Ex. 4, Decision and Order of the Hon. James T. Hayden, Acting New York State Supreme Court Justice, Chemung County

Upon inspecting the mail, a member of the mailroom staff determined that it contained contraband. On or about July 21, 2014, the mailroom forwarded to Plaintiff the empty envelope from the County Clerk, which had been stamped, "Contraband Removed See Enclosed Explanation & Instructions." Along with the envelope was a form notice from "Mailroom Staff," stating that mail had been received from "Monroe County Clerk" that was contraband because it was "disapproved material." The notice further indicated that the materials had to be returned to the County Clerk. The form notice was not signed.

Although the form was not signed, Plaintiff maintains in this action that the person responsible for "censoring" his mail was the Mailroom Supervisor, defendant K. Washburn ("Washburn"). Plaintiff further contends that Washburn acted after consulting with defendant Supervising Offender Rehabilitation Coordinator J. Mackey ("Mackey"). Plaintiff maintains that on or about July 22, 2014, he complained about the matter to the Inmate Grievance Review Committee ("IGRC") Supervisor, "Mrs. H. Martin" ("Martin").[20] According to Plaintiff, Martin, in his presence, placed a telephone call to Southport's mailroom and spoke with Washburn, who told Martin that "the mail had been withheld because there was an order of protection in place." Plaintiff further indicates that Martin told him that Washburn had made the decision after consulting with Mackey.[21]

Directive 4422 prohibits inmates from corresponding with persons who have orders of protection against the inmate, *id.* at § III(B)(5), and a "no contact" Order of Protection

---

[20] Pl. Mem. of Law filed in support of Article 78 Proceeding at p. 5, n. 2 & p. 12.
[21] According to Plaintiff's initial description of the conversation, Martin told him that Washburn had made the decision after consulting Mackey. ECF No. 1 at ¶ 13, n. 2. However, in a more detailed description of that conversation, Plaintiff stated that Washburn merely explained why the material was classified as contraband, but did not say that she was the person who had made that decision or that Mackey had been involved in the decision; rather, Plaintiff stated that apart from what he was told about the order of protection, "no other information was provided" to him during his meeting with Martin. ECF No. 1 at ¶ 18. However, Plaintiff later added that Martin had also told him that Washburn had made the decision after consulting Mackey. ECF No. 1 at ¶ 13, n. 1.

had been issued against Plaintiff.  However, Plaintiff maintains that the order of protection "ha[d] nothing to do with the issue at hand,"[22] since he was not attempting to communicate with the child.

DOCCS Directive 4422 indicates that when incoming mail is withheld as contraband, the designated staff member shall so notify the inmate, who may appeal by writing to the facility Superintendent. *Id.* at § III(G)(7).  Plaintiff appealed the Mailroom Staff's determination to Southport's Superintendent, S. Wenderlich ("Wenderlich"), who referred the matter to "Mr. Tanea" ("Tanea"), Deputy Superintendent for Programs. Approximately one week later, Plaintiff received a notice from Mackey, who, in the interim, had become the acting Deputy Superintendent for Programs in place of Tanea.[23]

Mackey denied Plaintiff's appeal, finding and that the material sent by the Monroe County Clerk was contraband under Directive 4422 since it contained "personally identifying information" about persons who were neither the Plaintiff nor his immediate family.  In that regard, Directive 4422 states, in pertinent part:

> When in the course of inspection, contraband is found, it shall be removed and given special handling according to type:
>
> ***
>
> Personal identifying information:  Any material which appears to contain personal identifying information . . . belonging to any person who is not a member of the inmate's immediate family shall be examined.

*Id.* at § III(G)(4)(c).  Apart from what Plaintiff was allegedly told second hand by Martin, this is the only explanation that Plaintiff was ever given by DOCCS staff to explain why the material was contraband.

---

[22] Compl., ECF No. 1 at p. 4, n. 3.
[23] Compl., ECF No. 1 at ¶ 22.

Plaintiff appealed Mackey's decision to Anthony Annucci ("Annucci"), Acting Commissioner of DOCCS, who referred the appeal to defendant "Jeff McKoy" ("McKoy"), Deputy Commissioner of Programs.   McKoy denied the appeal, agreeing that the materials were contraband under Directive 4422 for the reason stated by Mackey.

As mentioned earlier, mail received from a county clerk is treated as ordinary non-privileged mail.   However, mail received from a court is designated as privileged. *See*, DOCCS Directive 4421, § II(A)(1).   According to Directive 4421, incoming privileged mail should be opened in the inmate's presence and inspected for contraband. *Id.* at § III(B). Consequently, after Plaintiff was unable to receive the documents from the Monroe County Clerk, he requested the same documents from the Town of Gates Justice Court, in which the felony complaint had originally been filed against him.[24]   In this regard, the Amended Complaint indicates that after being denied the mailing from the Monroe County Clerk, Plaintiff sought the documents directly from the Gates Town Court since he believed that correspondence from the court would qualify as legal mail under DOCCS Directive 4421.[25]

Subsequently, on at least two occasions, the Gates Town Justice Court mailed documents to Plaintiff at Southport.   However, both times the mail was returned to the Gates Justice Court.   Plaintiff further maintains that someone at Southport must have improperly opened the mail outside of his presence, in order to have determined what it contained.   Plaintiff maintains that officials at Southport never told him that the mail had been received or returned.   The record, though, contains no documentary evidence that

---

[24] In his Amended Complaint, ECF No. 4 at ¶ 31, Plaintiff states that materials her requested from the Town of Gates were the same materials that he had requested from the Monroe County Clerk.
[25] Am. Compl. (ECF No. 4) at ¶ 30.

the mail was ever received at Southport.  Nevertheless, Plaintiff maintains that he learned that the mail had been returned after he wrote to the New York State Office of Court Administration ("OCA") about matter.  In a letter to Plaintiff, OCA indicated that "administrative staff from the Southport Correctional Facility [had] informed the Gates Town Court that given the nature of [Plaintiff's] conviction to a sex offense, [Southport] would not allow any information or documents to be forwarded to [Plaintiff] directly from or related to the victim in the case." Compl., ECF No. 1, Ex.  D.[26]

Notably, the correspondence from OCA does not indicate that any particular individual at Southport was responsible for returning the documents to the Gates Town Court.  Rather, as quoted above, OCA's letter merely references "certain administrative staff."[27]  It does not appear from the record that Plaintiff filed any grievances or appeals concerning the documents that were returned to the Gates Town Court, and consequently the actual circumstances of this event and the identity of the person involved have never been determined.

On or about August 29, 2014, Plaintiff commenced an action in New York State Supreme Court, Chemung County, against Washburn, Mackey, Wenderlich and Annucci. *See*, Compl., ECF No. 1 at ¶ 9.  Plaintiff drafted the action as one seeking a declaratory judgment that the defendants had violated his constitutional and statutory rights to receive mail from the Monroe County Clerk pertaining to his "current commitment and ongoing legal action." *See*, McKay Decl., Ex. 1 at p. 1. (The complaint did not mention the mailings from the Gates Town Court)  More specifically, Plaintiff alleged that the defendants

---

[26] The Gates Town Court had further indicated that it was unable to send the requested transcripts in any event, since there were no mechanical recordings made at the relevant time from which a transcript could be produced. *See*, ECF No. 1-1 at p. 44.
[27] ECF No. 4-1 at p. 48.

violated his "constitutional and statutory rights of free speech and access to the courts," as well as his right to "due process."[28]  Plaintiff demanded a declaratory judgment that he was entitled to receive the documents that he had requested and that the defendants had violated his rights.  The matter was fully briefed before the judge to whom the case was assigned, the Honorable James T. Hayden, Acting Supreme Court Justice.

However, after waiting two months for a decision from Judge Hayden, Plaintiff commenced the subject action in this Court.[29]  The claims asserted in the instant action were nearly identical to those already asserted in the state-court action, with two differences:  First, the instant action did not assert a due process claim; and, second, the instant action referred to the mailings from both the Monroe County Clerk and the Gates Town Court, whereas the state-court action referred only to the mailing from the County Clerk.  Plaintiff acknowledges, though, that the two lawsuits involve "the same facts."[30]

More specifically with regard to the instant action, on June 30, 2015, Plaintiff, proceeding *pro se*, commenced the matter by filing and Complaint and a request for leave to proceed *in forma pauperis*.   The Complaint asserted that by preventing Plaintiff from receiving the material that he had requested from the County Clerk and Town Court, defendants violated "Plaintiff's right of free speech and meaningful access to the courts."  Complaint, ECF No. 1 at ¶ 41.  The Complaint indicated that Plaintiff needed the withheld materials to "bring a claim of actual innocence and other claims in the Supreme Court of the County of Monroe." Comp., ECF No. 1 at ¶ 33.  The Complaint further noted that Plaintiff's action in Supreme Court, Chemung County, was still pending.

---

[28] McKay Decl., Ex. 1, state court compl. at pp. 1, 3.
[29] *See*, Compl. in this action (ECF No. 1 at ¶ 9) (Indicating that he had filed the state-court lawsuit and that "[a] decision has been pending [in that court] since April 2015.").
[30] Original Complaint in this action,  ECF No. 1 at ¶ 8.

On October 5, 2015, New York State Supreme Court, Chemung County, dismissed Plaintiff's claims, finding that Plaintiff did not have a right to receive the documents sent by the County Clerk which had been withheld from him at Southport.  Supreme Court's decision, in its entirely, states:

> Petitioner, who is currently an inmate at Southport Correctional Facility, had previously brought an action for Declaratory Judgment and motion for a temporary restraining order as well as a request for court appointed legal representation and poor person status.  The bases for these causes of action are largely the reading and withholding or censorship of petitioner's mail.  Since this is an action in the nature of Mandamus, Prohibition and Order of Certiorari to Review the matter was converted to an Article 78 petition, poor person [status] was granted, and court appointed counsel denied.

> The court having received the respondents' answer and return, it is now clear why the correctional facility denied petitioner receipt of mail from the clerk of the court that convicted him.[31]   Petitioner had requested four specific items.  These were copies of the divestiture, the felony complaint and supporting deposition, and the transcripts of the arraignment.  A review of the withheld documents [from the Monroe County Clerk] reveals that they do not contain the felony complaint or transcripts of the arraignment.  The petitioner may well be permitted to receive the felony complaint in redacted form so as not to reveal personal information of any victims.  In addition he may be entitled to redacted versions of those aspects of the arraignment proceeding for which he was present.  However, the transcripts must be created by a court reporter who recorded the proceedings and that would require the petitioner to pay for that service.  In fact, petitioner advised the county court that he would be willing to pay a fee if that was required.  In any event, neither of these documents was actually contained in the submitted confiscated mail.[32]

> It does appear that two documents were provided [by the County Clerk] which would qualify as divestiture documents from the lower court to the county court.  However, they contain very little information and have no legal

---

[31] Referring to the Monroe County Clerk.
[32] As mentioned earlier, the Gates Town Justice Court also indicated that it had not sent the requested transcripts.  Accordingly, Plaintiff cannot maintain that Defendants prevented him from receiving the transcripts since neither the County Clerk nor the Town Court attempted to send him the transcripts.

significance except to relinquish the jurisdiction of one court for another. Finally, the statements taken by the police of the victims were apparently sent to the correctional facility and could not be made available to the petitioner as they contain personal information and qualify as documents for the protection of the victim.  In addition, as pointed out by respondents, "Civil Rights Law § 50-b prohibits the disclosure of any portion of any police report, court file, or other document, which tends to identify the victim of a sex offense. (*See*, Civil Rights Law § 50-b(1); *Fappiano v. New York City Police Dept.*, 95 N.Y.2d 738 [Ct App 2001]."  Therefore, the petitioner would not be permitted to view them in any event.

Since none of the paperwork submitted by the county court to the correctional facility is permissible for the petitioner to view, and since the items which would be permitted were not actually sent to the correctional facility, this court finds no basis on which to grant petitioner's request.  The requests are either moot as they were not provided to the facility in the first place, or confidential as containing personal information about the victims and nothing else, and thus could not be made available to the petitioner in any event.

For all of these reasons, it is hereby ORDERED that the petition is denied.

McKay Decl., Ex. 4.

Plaintiff contends that he attempted to appeal the decision of Supreme Court, Chemung County.  Plaintiff, though, was not entitled to take an appeal as of right from the denial of his Article 78 petition. *See*, N.Y. C.P.L.R. 5701(b)(1) (McKinney) ("An order is not appealable to the appellate division as of right where it: 1. is made in a proceeding against a body or officer pursuant to article 78.").  Consequently, Plaintiff filed an application for permission to appeal to the Appellate Division, Third Department, pursuant to CPLR § 5701(c).  However, there is no indication that the Appellate Division ever granted Plaintiff's request for permission to appeal.

On October 30, 2015, this Court, which was unaware that Chemung County Supreme Court had dismissed Plaintiff's state-court action, issued an Order (ECF No. 3)

granting Plaintiff's application to proceed *in forma pauperis* and screening the Complaint pursuant to 28 U.S.C. § § 1915(e)(2)(B) & 1915A(b).  The Order indicated that Plaintiff had not pleaded sufficient facts to support a claim for denial of access to the courts.  The Order indicated, for example, that Plaintiff had made only vague statements about the "actual innocence" claim which he allegedly was attempting to assert in state court. However, the Court gave Plaintiff an opportunity to file an amended pleading.

On November 17, 2015, Plaintiff filed an Amended Complaint. (ECF No. 4), supported by 152 pages of exhibits.[33]  The Amended Complaint largely reiterates the allegations that were contained in the original pleading, and similarly purports to assert two claims:  1) a claim that Defendants "censored" Plaintiff's legal mail in violation of his First Amendment right of free speech; and 2) a claim that by "censoring" Plaintiff's mail, Defendants violated his First Amendment right of access to the courts.

With regard to the censorship/free speech/free flow of mail claim, the Amended Complaint asserts that although the withheld documents may have contained personal information concerning the victim, the documents should not have been considered contraband because the victim was his former stepdaughter, and thus, a member of his immediate family.  Alternatively, the Amended Complaint asserts that the personal information about the victim could have been redacted.

With regard to the denial of access to the courts claim, the Amended Complaint indicates, as mentioned earlier, that Plaintiff intends to use the withheld documents to bring a new motion under CPL § 440.10 based on "actual innocence."  In that regard, the pleading states:

---

[33] The exhibits include DOCCS Directive 4421 ("Privileged Correspondence") and DOCS Directive 4422 ("Inmate Correspondence Program").

> Among other grounds, the above enumerated documents were requested in anticipation of filing a claim of actual innocence pursuant to N.Y. Crim. Proc. Law § 440.10 in the Supreme Court for the Count of Monroe, on the following grounds: a. New evidence tending to prove that my conviction was had with material false testimony by the complainant and her mother, a key prosecution witness.  b. Counsel failed to interview and call significant witnesses who could possibly have testified that the complainant was lying about the allegations. c. Counsel failed to move before trial to dismiss counts 3 through 11 of indictment 2003-0265 for noncompliance with CPL 30.30.

Amended Complaint, ECF No. 4 at ¶ 37.  The Amended Complaint then goes on to set forth the actual legal arguments that Plaintiff purportedly intends to raise in his new CPL § 440.10 application. Am. Compl., ECF No. 4 at pp. 10-38.[34]

On June 8, 2016, the Court issued an Order (ECF No. 9) permitting the claims in the Amended Complaint to go forward.

On August 4, 2016, Defendants filed the subject motion to dismiss the Amended Complaint pursuant to FRCP 12(b)(6). (ECF No. 14).  With regard to the free speech/free flow of mail claim,  Defendants contend that the Amended Complaint fails to state a plausible claim, since the documents were correctly withheld under DOCCS Directive 4422, which is "supported by the legitimate penological interest of keeping contraband from inmates to protect them and staff."[35]  As for Plaintiff's assertion that Directive 4422 did not apply to him because the victim was a member of his family, Defendants state that such argument is disingenuous, since Plaintiff and the child's mother are now separated and there is a no-contact order of protection in place.  Defendants further

---

[34] The Court observes that these proposed "new" arguments are merely restatements or variations of arguments that Plaintiff already made in his numerous prior appeals and collateral attacks *See, generally, Roman v. Napoli*, 6:08-CV- 6561, Habeas Petition, ECF No. 1, generally and at pp. 7-8, 18-19, 25-27, 29-34; *see also, id.*, ECF No.  1-2 at pp. 2, 35; *id.*, ECF No. 28; *id.*, ECF No. 34; *see also, Roman v. Fierro*, 6:12-CV-6123, ECF No. 1 and exhibits.
[35] Defs.' Mem. of Law at p. 14.

indicate that New York Civil Rights Law § 50-b independently prevented Plaintiff from having the documents.

Alternatively, Defendants maintain that Plaintiff is barred, by collateral estoppel and/or res judicata, from claiming that he was entitled to receive the withheld documents, since New York State Supreme Court, Chemung County, already rejected that precise argument. *See*, Defs. Memo of Law at p. 18 ("Plaintiff raised an identical lack of access to the courts claim in his Article 78 petition, and the state court ultimately concluded that he had no right to the confidential documents and denied the relief he requested.").

As for the claim alleging denial of access to the courts, Defendants contend that it similarly fails to state an actionable claim, since the Amended Complaint does not plausibly allege that Plaintiff suffered actual injury. That is, Defendants maintain that it does not allege that Plaintiff was prevented from pursuing a non-frivolous claim. This argument has two aspects. First, Defendants contend that Defendants did not actually prevent Plaintiff from filing his proposed CPL 440.10 motion, since he did not need the documents sent to him by the County Clerk in order to file the motion. In this regard, Defendants contend that their actions did not prevent Plaintiff from bringing filing another CPL 440.10 motion since he was already "well informed of the circumstances surrounding his convictions," and the withheld documents contained little if any useful information.[36] Defendants further maintain that even assuming the withheld documents were necessary for Plaintiff to bring a new CPL § 440.10 motion, which he has not shown, that he could have had the documents sent directly to Supreme Court, Monroe County, for *in camera*

---

[36] Defs.' Mem. of Law at p 10 ("Even without access to the confidential documents, Plaintiff could file, and in fact has filed on numerous occasions, habeas petitions and other postconviction motions raising a variety of issues, including those that he outlines in his Amended Complaint.").

review.   Second, Defendants contend that Plaintiff's proposed CPL § 440.10 motion would be frivolous in any event since it would involve matters that were already explored at trial or matters that he already raised unsuccessfully in prior appeals and collateral attacks.

On August 25, 2016, Plaintiff filed a motion (ECF No. 18) for appointment of counsel and a motion for leave to further amend the Amended Complaint.  Plaintiff asks the Court to appoint him counsel, stating that he is destitute, that his attempts to retain his own attorney have been "ignored," and that he is at a disadvantage since Defendants' counsel has greater resources and legal knowledge.  Plaintiff's proposed changes to the Amended Complaint consist of a demand for a jury trial and a revision of the amount and type of money damages being sought.

On September 2, 2016, Plaintiff filed a response (ECF No. 19) to Defendants' motion to dismiss the Amended Complaint.  Preliminarily, Plaintiff contends that in addition to the two First Amendment claims discussed earlier, the Amended Complaint sets forth a "freestanding" claim that Defendants violated his Due Process rights by opening mail from the Gates Town Justice Court outside of his presence and returning the mail to the court.  Plaintiff asserts that such claim must be allowed to go forward, since it was not addressed in Defendants' motion.

Additionally, Plaintiff contends that his situation does not fall under Directive 4422. In that regard, Plaintiff argues that since some of the documents were sent by the Town of Gates Justice Court, the materials should be considered privileged legal correspondence under DOCCS Directive 4421.

18

Next, Plaintiff argues that New York Civil Rights Law § 50-b does not apply to disclosure of documents to persons accused of sex crimes. (citing § 50-b(2)(a)). Alternatively, Plaintiff asserts that even if New York Civil Rights Law § 50-b prohibits him from having the withheld documents, that such statute is trumped by his First Amendment rights and by his Fourteenth Amendment right to due process.

As for Defendants' arguments concerning res judicata/collateral estoppel, Plaintiff contends that those doctrines do not apply since, although New York State Supreme Court, Chemung County, denied his Article 78 Petition and ruled that he was not entitled to receive the withheld documents, he applied for leave to appeal that ruling.  Plaintiff acknowledges, though, that he never received any response to that request from the New York State Supreme Court, Appellate Division, even though he submitted the application almost five years ago.[37]

On September 8, 2016, Defendants filed a reply. (ECF No. 20).  The Reply disputes Plaintiff's contention that the Amended Complaint contains a "freestanding" 14th Amendment Due Process claim.  The Reply also maintains that Plaintiff is not entitled to the documents under Civil Rights Law § 50-b(2)(a), as he claims, since that section pertains to persons charged with crimes, but not persons already convicted.  On this point, the Reply cites *Fappiano v. New York City Police Dept.*, 95 N.Y.2d 738, 747 (2001).

The Court has considered the parties' submissions.

---

[37] Plaintiff seems to insinuate that some foul play may have prevented his request from reaching the Appellate Division, Third Department. *See,* ECF No. 19 at p. 6.  However, he offers no factual support for such a claim.

ANALYSIS

Plaintiff's *Pro Se* Status

Plaintiff is proceeding *pro se*, and consequently the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Motion to Appoint Counsel

Plaintiff asks the Court to appoint him counsel, stating that he is destitute, that his attempts to retain his own attorney have been ignored, and that he is at a disadvantage since Defendants' counsel have greater resources and legal knowledge.

Although there is no constitutional right to appointed counsel in civil cases, under 28 U.S.C. § 1915(e), the Court in its discretion may appoint counsel to assist indigent litigants. *See, e.g., Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988). The factors to be considered include whether: (1) the claims are likely to be of substance; (2) the indigent is able to investigate the crucial facts concerning his claim; (3) conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) the legal issues involved are complex; and (5) there are any special reasons why appointment of counsel would be more likely to lead to a just determination. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (citing *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)).

Having considered the relevant factors, the Court finds that appointment of counsel is not required.  Plaintiff does not really need an attorney at this stage of the litigation, since he is an experienced *pro se* litigator and has presented his claims in a very thorough, clear and articulate manner.  Further, Plaintiff is at no disadvantage

since the only issue for the Court to decide is the legal sufficiency of his claims, which the Court is required to construe liberally to raise the strongest arguments that they suggest.  Consequently, the application is denied.

The Motion to Amend

Plaintiff's Motion to Amend/Correct the Complaint asks that he be allowed to further amend the Amended Complaint, but without filing a new complaint.  The proposed changes to the Amended Complaint are very minor, consisting only of a demand for a jury trial and a revision of the amount and type of money damages being sought.  The Court grants the application, though the amendments will have no effect on the Court's decision of Defendants' motion to dismiss.

Motions Under Rule 12(b)(6)

The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. 2018).

> In its review, the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents "integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and

internal quotation marks omitted).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

"[A]s *Iqbal* makes clear, a plausible claim must come before discovery, not the

other way around." *Angiulo v. Cty. of Westchester,* No. 11-CV-7823 CS, 2012 WL 5278523, at *3 (S.D.N.Y. Oct. 25, 2012) (citation omitted); *see also, McBeth v. Porges*, 171 F. Supp.3d 216, 236 (S.D.N.Y. 2016) (Observing that pursuant to *Iqbal*'s pleading standard, "the Federal Rules of Civil Procedure do 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions or speculation.' ") (quoting *Iqbal*).

<u>Section 1983</u>

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right.

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The theory of respondeat superior is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Accordingly, "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), as amended (Feb. 24, 2016) (*citing Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996).

<u>The Amended Complaint Fails to State a Claim Involving</u>
<u>the Mailing from the Gates Town Justice Court</u>

Preliminarily, the Court revisits its decision under 28 U.S.C. § 1915(e)(2)(B) to allow all claims in the Amended Complaint to proceed.  In this regard, the Amended Complaint asserts that Plaintiff received a letter from OCA indicating that Washburn and Mackey improperly opened and withheld the legal mail sent to him by the Gates Town Justice Court.[38] However, having now thoroughly reviewed the exhibits to the Amended Complaint, the Court can say that assertion is demonstrably false.  The letter from OCA does not mention Washburn or Mackey.  Rather, the letter only vaguely refers to a phone conversation with an unidentified administrative staff member.[39]  Plaintiff acknowledges that he has attempted to sue the unidentified administrative staff member as a "John/Jane Doe" defendant.[40]  The pleading contains no additional facts linking any named defendant to this incident.  The Amended Complaint therefore fails to plausibly state an "interference with legal mail" claim against Washburn and Mackey, or against any named defendant.[41]  As mentioned earlier, Plaintiff cannot maintain claims against the named defendants merely because they hold positions of authority.

The Court already screened the complaint under 28 U.S.C. § 1915(e)(2)(B), but that does not stop the Court from dismissing a claim or claims now that it has performed

---

[38] Am. Compl., ECF No. 4 at ¶ 33 ("The letter indicates that on several occasions, unbeknownst to me, defendants K. Washburn and J. Mackey had opened, read, and returned my properly identified 'legal mail' containing the documents in question back to the court.") *see also*, original Compl., ECF No. 1 at ¶ 38 ("The letter indicates that on several occasions, unbeknownst to plaintiff, defendants K. Washburn and J. Mackey had opened, read, and returned Plaintiff's properly identified 'legal mail' back to the court.").
[39] ECF No. 1-1 at pp. 52-53.
[40] Am. Compl., ECF No. 4 at ¶ 34.
[41] As already explained, Plaintiff purported to assert this claim against Washburn and Mackey by misstating the contents of the letter that he received from OCA. Plaintiff cannot sue Washburn for this claim merely because she is a supervisor, and there is no indication that Mackey was involved. Additionally, since there is no indication that Plaintiff ever filed a grievance or appeal concerning the Town Court mail, there is clearly no basis for liability against McKoy as to this claim.

a more thorough review.[42] *See, Whitelaw v. Kennedy*, No. 04-CV-6626 CJS, 2010 WL 1741381, at *5 (W.D.N.Y. Apr. 28, 2010) ("[U]pon further review of Plaintiff's pleadings, the Court sua sponte revisits its earlier decisions and finds that this action must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. *See, Peterec–Tolino v. New York*, No. 08–4732–cv, 2010 WL 445643 at *1 (2d Cir. Feb. 8, 2010) ("Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), [where a plaintiff proceeds *in forma pauperis*,] a complaint may be dismissed 'at any time' if the court determines that the action fails to state a claim on which relief may be granted. While we understand why Appellant might feel aggrieved at the district court's dismissal of his complaint *sua sponte* without awaiting the defendants' response, such an action is permissible if the complaint fails to state a claim for relief.") (citation omitted).

Even if a *pro se* plaintiff's pleading fails to state a claim and therefore warrants dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court should ordinarily allow at least one opportunity to amend. *See, Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) ("[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated .... [A] *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.") (emphasis added; citation omitted).

---

[42] Any decision in the initial screening orders to allow the legal mail claim to proceed would have been influenced by Plaintiff's misstatement concerning the contents of the letter that he received from OCA.

Here, however, Plaintiff has already amended his Complaint twice.  Moreover, Plaintiff's submissions contain no facts suggesting that he can amend the pleading to state a plausible claim against Washburn or any other named defendant involving interference with mail from the Gates Town Justice Court.

At most, the record suggests that Plaintiff could plausibly assert such a claim against the defendant identified only as "Jane/John Doe, Administration, Southport Correctional Facility."  However, any future amendment to substitute a named person for the Jane/John Doe defendant would not relate back, and the claim would now be time barred. *See, e.g., Cotto v. City of New York*, No. 17-2845, 2020 WL 1228765 (2d Cir. Mar. 13, 2020) ("[W]e have explained that "the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity' " for the purposes of Rule 15(c)(1)(C) . . . .  Cotto therefore cannot use Rule 15(c)(1)(C) to relate her claims against Officer Coote back to the time of filing her original "John Doe" complaint.").  Moreover, even assuming *arguendo* that Plaintiff could make a timely amendment as to the Jane/John Doe defendant, it appears that the claim would be barred under 28 U.S.C. § 1997e(a) since, amongst all of the documentation that Plaintiff has submitted, there is no indication that he administratively exhausted the "legal mail claim" before commencing this action.[43]

For all these reasons, to the extent that the Amended Complaint purports to assert a First Amendment interference-with-mail claim involving the mailing from the Gates Town Court, the claim is dismissed with prejudice.

---

[43] Plaintiff only claims to have exhausted the claim regarding the mail received from the Monroe County Clerk, which he admits is not classified as legal mail.  There is no indication that Plaintiff filed a similar appeal concerning the legal mail, even though OCA advised him to pursue the matter with officials at Southport. *See*, Exs. to Am. Compl., ECF No. 4-1 at p. 48.

<u>The Amended Complaint Also Fails to State</u>
<u>a Freestanding Due Process Claim</u>

As mentioned earlier, Plaintiff contends that his Amended Complaint contains a "freestanding" Due Process claim, which Defendants failed to address in their Motion to Dismiss. Specifically, Plaintiff alleges that he pleaded such a claim based upon Defendants opening and returning mail received from the Town of Gates Justice Court. However, the Court can easily dispose of that argument since it has already dismissed the claim involving the Gates Town Court. Further, the Amended Complaint does not give notice of a due process claim, even when liberally construed. *See, Pierre v. City of Rochester*, No. 16-CV-6428 CJS, 2018 WL 10072453, at *21 (W.D.N.Y. Sept. 7, 2018) ("Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint give 'fair notice' of the claims being asserted, *see, e.g., Keiler v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014)"), reconsideration denied, No. 16-CV-6428 CJS, 2018 WL 5729118 (W.D.N.Y. Nov. 2, 2018), appeal dismissed (Jan. 16, 2019).

Indeed, the Amended Complaint does not mention due process. Rather, the Amended Complaint expressly states, in relation to the alleged withholding of mail from the Town of Gates, that Plaintiff is asserting just two claims: 1) a First Amendment "Free Speech (Improper Censorship of Legal Mail)" claim; and 2) a First Amendment "meaningful access to the courts" claim. Am. Compl., ECF No. 4 at pp. 9, 38. In sum, Plaintiff has no "freestanding" Due Process claim. In this regard, the Amended Complaint differs from the complaint in Plaintiff's state-court Article 78 action, which does reference a due process claim. Accordingly, insofar as Plaintiff believes that his Amended Complaint asserts a due process claim, he is mistaken.

The Court will proceed to consider whether the pleading states First Amendment

claims relating to the non-legal mail received from the Monroe County Clerk.

First Amendment Mail Claim

With regard to Plaintiff's first claim, alleging a violation of his First Amendment right

to be free from interference with his mail, the general legal principles are well settled:

> Under the First Amendment, prisoners have a right to the free flow of
> incoming and outgoing mail.   In balancing the competing interests
> implicated in restrictions on prison mail, courts have consistently afforded
> greater protection to legal mail than to non-legal mail.  A prisoner's right to
> receive and send mail, however, may be regulated. Such regulation is valid
> if it is reasonably related to legitimate penological interests.

*Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (citations and internal quotation

marks omitted).  For example, the Second Circuit has held that insofar as DOCCS

Directive 4422 limits an inmate's ability to possess postage stamps, it is reasonably

related to a legitimate penological goal and does not violate the inmate's First Amendment

right of free speech. *See, Johnson v. Goord*, 445 F.3d at 534–35 ("To the extent that

Johnson claims that Directive 4422(d) has somehow deprived him of his First Amendment

right to send outgoing non-legal mail, this claim must fail because the regulation is

reasonably related to legitimate penological interests.").

Further, while the right discussed above pertains to both incoming and outgoing

mail, it is well settled the prison officials have a greater penological interest in policing

mail coming into the facility. *See, Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S. Ct.

1874, 1881–82 (1989) ("The implications of outgoing correspondence for prison security

are of a categorically lesser magnitude than the implications of incoming materials.").

Additionally, to state a First Amendment claim based on mail tampering, an inmate

typically must allege more than a single instance of interference. *See, Abreu v. Travers*,

No. 915CV0540MADATB, 2016 WL 6127510, at *10 (N.D.N.Y. Oct. 20, 2016) ("A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge. Rather, the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail.") (citations and internal quotation marks omitted); *see also, Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012)("With regard to *legal* mail, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation.") (emphasis in original, citation omitted).

Here, the Court notes preliminarily that even assuming *arguendo* that the Amended Complaint otherwise plausibly asserted that Defendants had improperly interfered with Plaintiff's mail, the claim would nevertheless fail because it involves a single instance of interference with incoming non-legal mail.  This is insufficient to state a claim of constitutional magnitude.  *See, e.g., Edwards v. New York State Dep't of Corr. & Cmty. Supervision*, No. 919CV0254MADATB, 2019 WL 1978803, at *4 (N.D.N.Y. May 3, 2019) ("In order for an inmate to state a claim for interference with incoming non-legal mail he must show a pattern and practice of interference that is not justified by any legitimate penological concern.") (citations and internal quotation marks omitted).

Beyond this, Plaintiff has not plausibly asserted that the alleged instance of "censorship" was improper under the relevant law, regulations or directives.  Indeed, the Court agrees with Defendants that Plaintiff is collaterally estopped from claiming that Defendants improperly prevented him from receiving the materials that was mailed to him by the Monroe County Clerk.  Because of that, the Court does not need to perform its own independent analysis of whether, as a matter of law, Defendants' actions were proper

29

under Directive 4422 and whether the relevant section of the Directive is reasonably related to a legitimate penological objective.

As discussed earlier, Defendants maintain that Plaintiff's claims are barred by the ruling of New York State Supreme Court, Chemung County, which denied his Article 78 petition after finding that he had no right to receive the withheld documents.  Plaintiff's only response to this argument is to imply that the state court's ruling is not final, since he filed a request for permission to appeal which was never granted.

With regard to the collateral estoppel effect in a federal court action of a prior New York State court decision in an Article 78 proceeding, the applicable law is as follows:

> Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must apply New York collateral estoppel law to New York state court judgments. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 93 (2d Cir. 2005). "The doctrine of collateral estoppel precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985) (internal quotation marks and citations omitted); *see also Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999) (Under New York law, "[c]ollateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party, whether or not the tribunals or causes of action are the same.") (internal quotation marks and alteration omitted)). Collateral estoppel applies with respect to Article 78 proceedings. *See LaFleur v. Whitman*, 300 F.3d 256, 272 (2d Cir. 2002).

*Stapleton v. Ponte*, 792 F. App'x 57, 58–59 (2d Cir. 2019).

Before commencing this action, Plaintiff commenced an almost identical action in New York State Supreme Court, Chemung County.  Supreme Court converted the matter to an Article 78 proceeding, which it denied.  In denying the petition Supreme Court made the following determinations: 1) In response to Plaintiff's request, the Monroe County

Clerk mailed only two documents – the divestiture document and the supporting deposition from the child victim;  2) the divestiture documents "contain[ed] very little information and ha[d] no legal significance except to relinquish the jurisdiction of one court for another"; 3) Plaintiff was not entitled to receive "statements taken by the police of the victim," *i.e.*, the supporting deposition, since the statements contained "personal information and qualif[ied] as confidential documents for the protection of the victim," and were also protected from disclosure to Plaintiff by New York Civil Rights § 50-b; and 4) even if the County Clerk had mailed Plaintiff the felony complaint he would not have been permitted to receive it unless it was first redacted "so as not to reveal personal information of any victims."

Plaintiff had a full and fair opportunity to litigate these issues before the state court. He does not claim otherwise.  Rather, Plaintiff contends that Supreme Court's ruling should have no collateral estoppel effect in this action, since he requested permission to appeal that determination.  However, the Court disagrees.  As mentioned earlier, Plaintiff could not appeal Supreme Court's decision as of right, and his alleged request for permission to appeal to the Supreme Court Appellate Division was never granted. Moreover, the mere filing of a notice of appeal does not prevent the application of res judicata/collateral estoppel. *See, Martin v. Bixby*, 40 A.D.3d 1277, 1278, 836 N.Y.S.2d 348, 349 (2007) ("While plaintiff apparently filed a notice of appeal from the resulting judgment and order, he later abandoned his appeal by failing to perfect it (*see e.g. Matter of Sawhorse Lbr. & More v. Amell*, 2 A.D.3d 1082, 1083, 769 N.Y.S.2d 316 [2003] )."); *see also, Mahota v. City of Hudson*, 179 A.D.2d 845, 846, 579 N.Y.S.2d 174, 176 (3d Dept. 1992) ("Plaintiffs apparently filed a notice of appeal from the prior order but failed

to perfect the appeal. Having had a full and fair opportunity to have the issue of whether the defect can give rise to actionable negligence decided in their favor, and having failed, plaintiffs are precluded by the doctrine of collateral estoppel from relitigating the issue which was finally decided by the prior order.").

Consequently, the ruling by Supreme Court, Chemung County, is a final judgment for purposes of collateral estoppel.  Plaintiff is therefore collaterally estopped from claiming in this action that the Monroe County Clerk mailed him anything besides the divestiture document and the supporting deposition to the felony complaint.  Further, Plaintiff is collaterally estopped from claiming that the divestiture documents contained any relevant information or had any "legal significance" with regard to his planned motion under CPL § 440.10.  Additionally, Plaintiff is collaterally estopped from claiming in this action that he was entitled, under the relevant DOCCS directives or under New York Civil Rights Law § 50-b, to receive the supporting deposition of the victim while at Southport. And, finally, Plaintiff is collaterally estopped from claiming in this action that he was entitled to receive an un-redacted copy of the felony complaint.

This collateral estoppel determination effectively negates Plaintiff's contention in this action that Defendants violated his federal constitutional rights with regard the mail sent by the Monroe County Clerk.  Consequently, the First Amendment mail interference claim is dismissed.

<u>The Amended Complaint Also Fails to State a Claim</u>
<u>For Denial of Access to the Courts</u>

The applicable legal principles concerning First Amendment claims for denial of access to the courts are well settled:

> It is well established that prisoners have a constitutional right to access the courts. The right of access to the courts requires that prisoners defending against criminal charges or convictions (either directly or collaterally) or challenging the conditions of their confinement not be impeded from presenting those defenses and claims for formal adjudication by a court. ... To establish standing for a claim for the denial of access to the courts, an inmate must show that he has suffered an "actual injury" traceable to the challenged conduct of prison officials—that is, that a "nonfrivolous" legal challenge to his judgment of conviction or conditions of confinement had been frustrated or was being impeded due to the actions of prison officials.

*Amaker v. Fischer*, 453 F. App'x 59, 63 (2d Cir. Dec. 20, 2011) (citations and internal quotation marks omitted).  The inmate must also show that the prison official's conduct was intentionally wrongful, that is, "deliberate and malicious." *See, Davis v. Rhoomes*, No. 07CIV6592JGK, 2009 WL 415628, at *8 (S.D.N.Y. Feb. 19, 2009) ("To state a First Amendment claim for denial of access to the courts, a plaintiff must allege that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff.") (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir.2003)).

In the subject action, the Amended Complaint fails to plausibly allege that Defendants acted deliberately and maliciously to violate his First Amendment right of access to the courts, since, as already explained, Plaintiff is collaterally estopped from claiming that he was entitled to receive the documents that were sent to him by the Monroe County Clerk. That is, Supreme Court, Chemung County, has already ruled that Defendants acted properly, and Plaintiff is bound by that ruling.

Moreover, the Court agrees with Defendants that the Amended Complaint does not plausibly allege actual injury, for two reasons.  First, it does not plausibly allege that Defendants' actions actually impeded Plaintiff from filing a CPL § 440.10 motion, and,

33

second, it does not plausibly allege that such a motion would be non-frivolous.  The facts set forth above indicate that as of 2014, Plaintiff was intimately familiar with the facts of his criminal prosecution after having litigated the matter for a decade, and that the documents Plaintiff requested from the County Clerk were already part of the state-court record.  Consequently, Plaintiff could have easily incorporated them into his motion by reference or asked to have them sent to the Court for in camera inspection. *See, e.g., Davis v. Rhoomes*,  2009 WL 415628, at *8 ("The plaintiff alleges that the loss of four pages of his legal papers prevented him from using the documents as exhibits in another court proceeding. However, he does not allege that his inability to file these four pages resulted in any prejudice to his case, for example, as in the dismissal of a complaint or the inability to file responsive papers. Absent such allegations, the plaintiff has not pleaded actual injury.").  Moreover, the proposed CPL 440.10 motion appears frivolous since it would amount to a rehashing of the same arguments by Plaintiff that the courts have already rejected time and again.

For these reasons, the First Amendment access to the courts claim is dismissed for failure to state a claim.

Further Leave to Amend Has Not Been Requested
and Would Not Be Appropriate in Any Event

As discussed earlier the Court is mindful that a *pro se* complaint "should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Jackson v. Wells Fargo Home Mortg.*, No. 19-1446-CV, 2020 WL 1970528 (2d Cir. Apr. 24, 2020) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  Here, Plaintiff has already had multiple opportunities to amend, and the Court does not believe that he can amend

his complaint to state actionable claims consistent with Rule 11.

CONCLUSION

Plaintiff's motion for appointment of counsel (ECF No. 18) is denied, Plaintiff's motion to amend (ECF No. 18) is granted, Defendants' motion to dismiss (ECF No. 14) is granted, and this action is dismissed with prejudice.  The Clerk is directed to close this action. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: Rochester, New York
       June 22, 2020

ENTER:

CHARLES J. SIRAGUSA
United States District Judge